Nancy WALKER, Plaintiff-Appellant,

v.

NAVAJO–HOPI INDIAN RELOCATION COMMISSION, Defendant-Appellee.

No. 83–2073.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1984.

Decided March 23, 1984.

Richard M. Grimsrud, Wilson, Gaylord & Grimsrud, Flagstaff, Ariz., for plaintiff-appellant.

Ellen J. Durkee, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before ANDERSON, SKOPIL, and FERGUSON, Circuit Judges.

SKOPIL, Circuit Judge:

## INTRODUCTION

The Navajo-Hopi Indian Relocation Commission ("Commission") determined that Walker was not entitled to benefits under the 1974 Settlement Act, 25 U.S.C. § 640d et seq. ("Act"). Walker complained in district court that she was entitled to benefits because her name appeared on a list of "potential" beneficiaries submitted by the Commission to Congress. The district court granted the Commission's motion for summary judgment. Walker appeals.

## FACTS AND PROCEEDINGS BELOW

In 1882 a large reservation in northeastern Arizona was set aside for use by the Hopi Indians and "such other Indians as the Secretary of the Interior may see fit to settle thereon." Executive Order of December 16, 1882. In subsequent years, members of the nearby Navajo Tribe migrated to much of the reservation and settled. By the middle part of this century the reservation was populated largely by Navajos. The Hopi and Navajo tribes, which historically had competed for resources, became enmeshed in a struggle over the reservation lands.

Various legislative and administrative efforts were made to quell the land conflict. See generally Healing v. Jones, 210 F.Supp. 125 (D.Ariz.1962), aff'd, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963) (per curiam). In 1962 it was determined that most of the reservation was held jointly and equally by Hopi and Navajo tribes. Id. The Healing case did little to resolve the conflict between the two tribes over the Joint Use Area ("JUA").

Finally, in 1974, Congress passed the Settlement Act, 25 U.S.C. §§ 640d et seq., directing the partition of the land making up the JUA. The Act directs a three-member Commission to relocate those Navajos on the Hopi side of the partition line and those Hopis on the Navajo side of the partition. 25 U.S.C. §§ 640d–11, 640d–12. Moving expenses and incentive bonuses are authorized for those relocating pursuant to the Act. 25 U.S.C. §§ 640d–13, 640d–14.

The hearings officer who considered Walker's application for relocation benefits made, among others, the following findings of fact.

1. Walker, who is over 80 years old, was born and lived most of her life on a part of the JUA partitioned for use by the Hopi Indians. She is a Navajo and has been harassed by Hopis.

2. Walker's health deteriorated over the years, and she began going to a medical facility in Tuba City, Arizona for eyesight problems in the late 1960's. She had eye surgery in 1971.

3. Walker returned to the JUA following her eye surgery. She was assisted in household chores and livestock care by her granddaughters and neighbors.

4. In 1972 Walker's granddaughters moved to Tuba City.

5. In 1972 Walker applied for a homesite lease in Tuba City. Walker had been going to Tuba City on a regular basis in order to obtain medical treatment and, when in Tuba City, she stayed with her granddaughters.

6. In 1973 applicant's hogan in the JUA was vandalized and partially burned.

7. In 1973 or early 1974 Walker sold the remains of the hogan for $50.00 and moved to Tuba City to live with her granddaughters.

8. After Walker moved to Tuba City she returned to the JUA approximately every other week for brief visits with friends.

9. Walker's visits to the JUA became less and less frequent.

10. In 1978 Walker was granted a homesite lease in Tuba City.

11. As of December 22, 1974 applicant did not own a homesite in the JUA and applicant did not reside in the JUA.

Based on these findings, the hearings officer concluded that applicant's move off of the JUA to Tuba City predated the Settlement Act and was a result of medical problems and fear of the Hopis. Her visits to the JUA subsequent to her move were primarily social. The hearings officer concluded that, because the move was not made "pursuant to the Act," Walker was not entitled to receive relocation benefits or assistance from the Commission. The Commission adopted the findings and conclusions without comment, and Walker took her case to the district court.

Walker did not challenge in district court, and does not challenge on appeal, the Commission's findings of fact. The sole basis for Walker's challenge in district court and here is that her name appeared on a list of Navajo residents of Hopi-partitioned lands submitted to Congress by the Commission in 1981. The Commission was required to produce such a list by the Act. 25 U.S.C. § 640d–12. Walker contended that, by virtue of her appearance on the 1981 list of names, she was *per se* eligible for relocation benefits.

The district court denied Walker's motion for summary judgment and granted the Commission's motion for summary judgment. Walker appeals.

## ISSUE

Is Walker entitled to relocation benefits based on the appearance of her name on the 1981 list?

## DISCUSSION

A. Standard of Review.

▮ The issue presented is a question of law. This court's review of a grant of summary judgment on a question of law is *de novo*. *Chelson v. Oregonian Publishing Co.,* 715 F.2d 1368, 1370 (9th Cir.1983). The standard applied in district court, and to be applied here, is whether the Commission's denial of benefits was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see Saavedra v. Donovan,* 700 F.2d 496, 498 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983).

The question of law presented involves statutory construction. The Commission's construction of the statute is entitled to considerable deference. *See, e.g., Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982); *Miller v. Youakim,* 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194 (1979).

B. Merits.

▮ Sections 12–15 of the Act create a three-member, independent Commission to plan relocation and disburse relocation benefits to those forced to move because of the partitioning of the JUA. *See* 25 U.S.C. §§ 640d–11 to 640d–15. The Commission's first task was the development of a relocation plan for residents of partitioned lands. The Commission was authorized to assist voluntary relocations prior to preparation of the plan. Other relocations were to be made pursuant to the plan. 25 U.S.C. § 640d–12(c).

The relocation plan was to be filed with Congress as part of a progress report. The report was also to include:

(1) the names of all members of the Navajo Tribe who reside within areas partitioned to the Hopi Tribe and the names of all members of Hopi Tribe

who reside within the areas partitioned to the Navajo Tribe; and

(2) the fair market value of the habitations and improvements owned by the heads of households identified by the Commission as being among the persons named in clause (1) of this subsection.

When the report was submitted to Congress in 1981 Walker's name was on the "enumeration" list. *See* Navajo and Hopi Indian Relocation Commission, *Report and Plan* (1981) ("Report and Plan"). It is Walker's position that inclusion of her name on the list is conclusive as to her eligibility for relocation benefits, despite the later finding by the Commission that she is not eligible.

The Commission has always taken the position that the enumeration list is not conclusive as to eligibility. The Commission treated the list as a way of informing Congress of the approximate number of people affected by the settlement so that estimates of relocation costs could be made. Prior to the list no reliable information was available about the number of people living in the JUA or their tribal affiliation.

Consistent with this interpretation, the Commission developed criteria in regulations for determining those entitled to benefits. The list upon which Walker's name appears is entitled "Roster of *Potential* Relocatees," (emphasis added) and is prefaced with the statement that:

The inclusion of persons in this enumeration is not to be taken as a determination of eligibility for the relocation benefits. Eligibility for relocation benefits occurs when an applicant has met the criteria specified in 25 C.F.R. § 700.5(y) and 700.11(b) [now codified at 25 C.F.R. § 700.97 and 700.147]. The determination of eligibility requires an investigation and examination of facts relevant to each individual application.

The criteria for determining eligibility are generous, providing benefits for people not physically residing on the JUA under some circumstances. Walker was found ineligible because she moved off the JUA prior to

creation of the Act and the benefit programs. The Commission found that she was no longer a "resident" at the time the Act became effective. *See* 25 C.F.R. § 700.147.

Walker does not, and may not now for the first time, contest the determination that she is ineligible under the Commission's criteria set forth in the regulations. Her argument is essentially that the Commission should be estopped from applying the criteria to her because of the inclusion of her name on the enumeration list.

Walker's argument is predicated on the assumption that Congress intended the list prepared by the Commission to include those persons finally found eligible for relocation benefits. A straightforward reading of the statutory language supports Walker's interpretation. We need not decide congressional intent in this regard, however, for even if we assume that Walker's interpretation of the statute is correct, her argument ultimately fails.

Whatever Congress originally expected to receive from the Commission, it is plain that the list submitted did not include all those finally found eligible for benefits. The Commission found the task of enumeration extremely difficult and time consuming. *See Report and Plan* at 2 and 67–72. The introduction and discussion included with the list are replete with warnings that inclusion thereon was not to be taken as an indication of final eligibility for relocation benefits.

Adoption of Walker's reasoning would require granting benefits to persons that Congress did not intend to receive them. It is apparent from the face of the statute that benefits were intended for those who moved as a result of the congressional partition. *See, e.g.,* 25 U.S.C. § 640d–13(b) (incentive payments for those who contract with the Commission to relocate within specified period; 25 U.S.C. § 640d–14(a) (Commission must purchase house and improvements from those who are "required to relocate under the terms of this Act"); 25 U.S.C. § 640d–14(b)(1) (Commission to

reimburse moving expenses of those "required to relocate pursuant to this Act"); 25 U.S.C. § 640d–14(b)(2) (Commission to help defray costs of new dwellings for those "required to relocate pursuant to this Act"). Walker cannot be said to have moved as a result of the Act, because she moved prior to its enactment.

Walker's reasoning would also have the anomolous result of denying benefits to some who should receive them. Walker argues the list should be conclusive as to benefit eligibility. Not all those eligible for benefits appear on the list submitted with the *Report and Plan.* It would be contrary to congressional intent to deny benefits to those otherwise eligible but not appearing on the list on the grounds the list is conclusive.

Walker has no basis for arguing that the Commission should be estopped from applying eligibility criteria to her. "[E]stoppel should be applied against the Government with utmost caution and restraint." *Schuster v. Commissioner,* 312 F.2d 311, 317 (9th Cir.1962). Estoppel should not be used to bar implementation of congressional intent simply because an agency has misinterpreted the law. *See Dixon v. United States,* 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965) (detrimental reliance on erroneous interpretation of law by IRS Commissioner insufficient to invoke estoppel); *Manocchio v. Commissioner,* 710 F.2d 1400, 1403 (9th Cir.1983) (same). Estoppel should be permitted to frustrate congressional intent only when not permitting reliance on an agency's erroneous interpretation of the law would result in a gross injustice. *Manocchio,* 710 F.2d at 1403; *Schuster,* 312 F.2d at 317.

Walker has pointed to no evidence that she relied on the enumeration list to her detriment. Her move, according to the findings of fact, was complete long before the enumeration list was published. Even if we assumed that she did detrimentally rely on the list, such reliance would not be reasonable. The list and accompanying report leave no doubt that eligibility for benefits was to be decided on a case-by-case

application of the appropriate criteria, and was not established merely by inclusion of a name on the list.

The district court is AFFIRMED.