856 F.2d 1344
 49 Ed. Law Rep. 68
 INTER-TRIBAL COUNCIL OF NEVADA, INC., Plaintiff-Appellant,
v.
Donald HODEL, individually and as Secretary of the Interior
of the United States of America, and the State of
Nevada, Defendants-Appellees.
 No. 87-1908.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 16, 1988.
Decided Sept. 8, 1988.
 
 Peter J. Sferrazza, Reno, Nev., for plaintiff-appellant.
 Myles E. Flint, William A. Maddox, Shirley Smith, U.S. Atty.'s Office, Reno, Nev., Dirk D. Suel, Kathleen P. Dewey, Dept. of Justice, Washington, D.C., for defendant-appellee Secretary of the Interior.
 Brian McKay, Brian Chally, Nev., Atty. Gen.'s Office, Carson City, Nev., for defendant-appellee State of Nev.
 Appeal from the United States District Court for the District of Nevada.
 Before ALDISERT*, BEEZER and O'SCANNLAIN, Circuit Judges.
 ALDISERT, Circuit Judge:
 
 
 1
 This appeal requires us first to decide if the Inter-Tribal Council of Nevada, Inc. ("the Council"), a non-profit corporation composed of twenty-five Nevada Indian tribes, has standing to demand forfeiture of an Indian school complex that was conveyed by the federal government to the State of Nevada by quitclaim deed. Should we decide that the Council has standing, we must determine whether Nevada has violated the terms of the quitclaim deed, and whether the Secretary of the Interior was required to follow the guidelines for an application for transfer of the property set forth in the Bureau of Indian Affairs (BIA) Manual.
 
 
 2
 The district court held that the Council lacked standing, and that even if the substantive issues were to be reached, the Council would not be entitled to relief. The Council has appealed.
 
 
 3
 The district court had jurisdiction under 28 U.S.C. Sec. 1361 (mandamus, a claim not pursued in this appeal), 28 U.S.C. Sec. 1362, 28 U.S.C. Sec. 1331, and 25 U.S.C. Sec. 293a. In pretrial proceedings, the court dismissed all counts of the complaint except the count demanding forfeiture of the deed under 25 U.S.C. Sec. 293a. In its March 10, 1987, opinion, the district court ruled solely on the Council's claim for forfeiture. Because the district court's judgment disposed of all claims, we have jurisdiction under 28 U.S.C. Sec. 1291. The Council timely filed its notice of appeal under Rule 4(a)(1), F.R.App.P.
 
 
 4
 Whether the Council had standing to bring this action is a question of law reviewed de novo. Fernandez v. Brock, 840 F.2d 622, 626 (9th Cir.1988). The district court's determination that Nevada did not violate the terms of the quitclaim deed involves findings of fact, reviewable under the clearly erroneous standard Rule 52(a), F.R.Civ.P.; Seattle-First Nat'l Bank v. Bluewater Partnership, 772 F.2d 565, 568 (9th Cir.1985).
 
 I.
 
 5
 Many aspects of the factual background of this dispute are not as clear as we would like them to be. But that is not the fault of the litigants. The question presented in this case stems from events that took place in 1887, only 38 years after the first settlement in Nevada at Mormon Station, now Genoa. Official record keeping was not as precise in that era as it is in the modern computer age. Nevertheless, we can distill the following facts from the record.
 
 
 6
 In 1887, the Nevada state legislature authorized Ormsby County to issue $10,000 in bonds for the purpose of establishing an Indian school to train and educate Indian children. 1887 Nev.Stat. ch. XII. The statute created an Indian School Commission, and authorized it to spend the bond proceeds on land and improvements for the use of the school. The statute also provided that if the federal government would agree to establish a school, the land purchased with the bond proceeds would be conveyed to the United States for that purpose.
 
 
 7
 The Commission first purchased a 200-acre site from S.C. Wright. A deed for the land was executed on July 9, 1888, in favor of the United States. The United States, however, found the land to be unsuitable as a school site and never accepted the deed. The Commission then advertised for a site and, as a result, received offers of several parcels. Special Indian Agent Henry S. Welton recommended to the Secretary of the Interior that the federal government accept the purchase of a 223-acre tract, valued at $6,375, and belonging to two parties, Ross and Miller. Plaintiff's Ex. F (History of acquisition of Stewart Indian School lands. Original on file with BIA in Washington, D.C.). The site was purchased with county funds and deeded directly to the United States. The legal effect of that transaction constitutes the crux of the controversy before us. In the Indian Appropriations Act of 1888, 25 Stat. 217, 236, Congress appropriated $25,000 for the establishment of the school, which was subsequently named the Stewart Indian School. The funds paid for the site ($6,375) were reimbursed to Ormsby County by the Indian Appropriation Act of June 7, 1897. 30 Stat. 62, 87; Plaintiff's Ex. O (13 Report of the Department of Interior), 55th Cong.2d Sess. 425 (1897).
 
 
 8
 In 1980, Congress closed the Stewart Indian School. Congress had decided to cut off funding for the school after determining that it was unsafe and too expensive to repair. Act of Dec. 12, 1980, Pub.L. No. 96-514, 94 Stat. 2957, 2968. See Memorandum Opinion of the District Court at 9-11 (quoting H.Rep. No. 1147, 96th Cong., 2d Sess., 41-42 (1980)). The House Report accompanying passage of the bill stated that adequate space existed in other schools to accommodate the children attending Stewart Indian School. At that time, only 27 students of the approximately 400 who were attending the school were Nevada residents; the majority of the students were from Arizona and California. According to the Council, a meeting was then held in September of 1981 among representatives of the Nevada Indian Tribes, the Nevada congressional delegation, and then Deputy Assistant Secretary for Indian Affairs, Roy Sampsel, at which time Mr. Sampsel indicated that as between the State of Nevada and the Nevada Indian Tribes, the Stewart Indian School property would be awarded to the applicant who submitted the best adaptive use plan. Third amended complaint at 5, p 14.
 
 
 9
 In 1982, the school was granted historic status under the National Historic Preservation Act, 16 U.S.C. Sec. 470 et seq., upon nomination by the State of Nevada. On May 4, 1982, the Council submitted an application for the site to the Secretary of the Interior on behalf of all the Nevada Indian tribes. The application included an adaptive use plan prepared by Kent Seavey, an authority on historic buildings and their preservation and maintenance. No affirmative action was taken on the Council's application. Instead, the Council received a letter from the Department of the Interior, asserting that the department did not have the necessary legislative authority to permit the transfer requested. The letter stated that the BIA had only the limited authority to transfer the property to a state or local government pursuant to 25 U.S.C. Sec. 293a. Plaintiff's Ex. R.
 
 
 10
 On April 22, 1982, Nevada filed its application for transfer under section 293a, which provides:
 
 
 11
 The Secretary of the Interior, or his authorized representative, is authorized to convey to State or local governmental agencies or to local school authorities all the right, title, and interest of the United States in any land and improvements thereon and personal property used in connection therewith heretofore or hereafter used for Federal Indian school purposes and no longer needed for such purposes: Provided, That the consent of the beneficial owner shall be obtained before the conveyance of title to land held by the United States in trust for an individual Indian or Indian tribe: Provided further, ... If the grantee of such land fails for a period of one year to observe the provisions of the transfer agreement and the Secretary of the Interior fails to declare a forfeiture of the conveyance, the former beneficial owner, if an individual Indian or an Indian tribe, may petition the United States District Court for the district where the land is located to declare a forfeiture of the conveyance and to vest the title in the United States, in the same trust status as previously existed.
 
 
 12
 The BIA Manual prescribes conditions and procedures to be complied with in order to effect a conveyance of federal Indian school properties under section 293a. The Manual requires "a complete statement as to the program of utilization, including salvage or conversion plans, a justification for the need for all of the acreage in any land requested and for the need for specific buildings and other improvements." 43 BIA Manual Supp. 2, Sec. 11.18A(3)(f). The Manual also provides that "the consent of the beneficial owner shall be obtained before there is a conveyance of title to land held by the United States in trust for an individual Indian or Indian Tribe." Id. Sec. 11.18B.
 
 
 13
 The Council and several individual Nevada Indian tribes represent that they opposed the transfer of the Stewart School property to Nevada, contending that Nevada had not submitted an adaptive use plan for the property in accordance with the Secretary's request and the requirements of the National Historic Preservation Act. Nevada's application for the site stated that the property would be used for public purposes, but that "with the innumerable unanswered questions on the site [conditions], it is unreasonable for the Federal government to expect Nevada to give the precise use at this point in time." Application for Stewart Indian School Property by the State of Nevada at 2.
 
 
 14
 In July of 1982, the United States conveyed the Stewart School complex to the State of Nevada. The conveyance contained several conditions. Among these was a provision that "[t]he State of Nevada shall make every reasonable effort to protect and preserve the property for the public benefit," and several conditions assuring that no alterations or rehabilitation would be performed without the approval of the Nevada State Historic Preservation Officer and the Bureau of Indian Affairs. Quitclaim Deed at 6. Nevada also agreed to maintain the property in accordance with the National Historic Preservation Act. Id. at 10. The Stewart School site is presently being used for various public purposes including, among others, use by a community college, several community service groups, and the Nevada Department of Prisons. The site also houses the Stewart Indian Museum.
 
 
 15
 The record does not show what constituted final agency action by the Department of Interior, or the date thereof authorizing the conveyance to Nevada. The record also does not indicate the manner of the precise objection to the conveyance by the Council as implied in its argument before us; nor does the record indicate if and how the Council lodged an administrative appeal in the Department of Interior after learning that Nevada's application had been accepted.
 
 II.
 
 16
 On June 10, 1982, the Council filed a complaint seeking to enjoin the proposed conveyance of the Stewart School property to Nevada, alleging that the land was held by the United States in trust for Nevada's Indians and that the Secretary had failed to obtain consent to the transfer from the "beneficial owner" as required by 25 U.S.C. Sec. 293a. The complaint further alleged that Nevada's application for transfer failed to comply with the requirements of the BIA Manual sections dealing with such transfers, and that the Secretary's approval violated both the Administrative Procedure Act (APA), 5 U.S.C. Secs. 500-706, and section 106 of the National Historic Preservation Act. The district court denied the injunction on July 22, 1982, and thereafter the property was deeded to Nevada. The Council then amended its complaint, asserting an additional cause of action under the forfeiture provision of section 293a, alleging that Nevada had failed to comply with the terms and conditions of the quitclaim deed and requesting that the deed be cancelled and title forfeited to the United States. In pre-trial proceedings, the district court dismissed all of the Council's claims except for the forfeiture action. See Inter-Tribal Council of Nevada v. Watt, 592 F.Supp. 1297 (D.Nev.1984). The court concluded that the Council's other allegations stated "a case in the nature of an action to quiet title to void a conveyance for fatal irregularities in its implementation." Id. at 1298. The court held that sovereign immunity barred such an action as against both the State of Nevada and the United States. Id.
 
 
 17
 The district court held a bench trial on December 9 and 10, 1986, and on March 10, 1987, the court entered judgment for the defendants holding that the Council lacked standing to maintain an action under section 293a because it was not a former beneficial owner of the property, and that, even if the plaintiff had standing, Nevada had reasonably complied with the terms and conditions of the quitclaim deed.
 
 
 18
 The question of standing under section 293a is squarely implicated in this case. There is also a tangential question of standing under 25 U.S.C. Sec. 443a to which appellant makes reference in its brief: "Plaintiff submits that it is an Indian group within the meaning of 25 U.S.C. Section 443(a) [443a] and that even if it is not, it clearly represents tribes that would be eligible for the transfer of the Stewart Indian School complex. As a competing applicant for the transfer of the Stewart Indian School complex, the Inter-Tribal Council of Nevada, Inc. has standing to bring the instant action." Br. for appellant at 29-30. Although an examination of the various complaints filed by the Council does not reveal that it ever asserted a cause of action under section 443a, we will nevertheless discuss this possibility because the record indicates that the Council relied upon the section in its opposition to the federal defendants' motion to dismiss. C.R. 43.
 
 III.
 
 19
 The rules of standing in a federal court reflect both the Article III case-or-controversy requirement under the Constitution and what the Supreme Court calls prudential considerations that define or limit the role of the courts. Standing is a threshold determination of the propriety of judicial intervention. We will take our directions from the teachings of the Supreme Court, which have been summarized in Valley Forge Christian College v. Americans United, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), and Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
 
 A.
 
 20
 In the constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between it and the defendant within the meaning of Article III. As an aspect of justiciability, the standing question asks whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant the plaintiff's invocation of federal court jurisdiction and justify exercise of the courts' remedial powers on behalf of the plaintiff. Warth, 422 U.S. at 498, 95 S.Ct. at 2204-05 (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). A federal court's jurisdiction, therefore, can be invoked only when the plaintiff has suffered "some threatened or actual injury resulting from the putatively illegal action...." Linda R.S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973); see also Association of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 151-54, 90 S.Ct. 827, 829-30, 25 L.Ed.2d 184 (1970).
 
 
 21
 For the purpose of our analysis, we will assume that the Council meets the Article III constitutional standing requirements. But this only begins our inquiry. The source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing that, apart from Article III's minimum requirements, serve to limit the role of the courts in resolving public disputes. Warth, 422 U.S. at 500, 95 S.Ct. at 2205-06. Essentially, the standing question in such cases is whether the statutory or constitutional provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. Id.
 
 
 22
 The Supreme Court has articulated three prudential considerations. First, the plaintiff generally must assert its own legal rights and interests, and cannot rest its claim to relief on the legal rights or interests of third parties. Next, a federal court will not adjudicate abstract questions of wide public significance that amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches. Finally, the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Valley Forge, 454 U.S. at 474-75, 102 S.Ct. at 759-60. The final consideration is central to our decision in this case. We shall examine the Council's right to standing under the statutory provisions of 25 U.S.C. Sec. 293a, 25 U.S.C. Sec. 443a, and the APA, 5 U.S.C. Secs. 500-706.
 
 B.
 
 23
 For the plaintiff to prevail on the question of standing to seek a forfeiture under 25 U.S.C. Sec. 293a, it must prove that it is the former beneficial owner of the Stewart School site. We have concluded, as did the district court, that the Council lacks standing because it has not proved that it is the former beneficial owner of the property.
 
 
 24
 The Council's best case scenario is drawn primarily, if not exclusively, from section 8 of the 1887 Nevada statute, which provides:
 
 
 25
 All lands purchased under the provisions of this Act shall be conveyed to said Indian School Commission in trust for the benefit of such school, and in case the United States will accept of the lands so purchased and make appropriations for the support of such school, it shall be the duty of said commission to convey all lands purchased by them under the provisions of this Act to the United States, and turn over all property acquired under the provisions of this Act to the proper officers of the United States.
 
 
 26
 1887 Nev.Stat. ch. XII (emphasis added).
 
 
 27
 This provision forms the major premise of the Council's first syllogism. From this premise, the Council argues that it represents the majority, if not the entirety, of the Indian population of Nevada for whose benefit the school was established. From these two premises, the Council draws the conclusion that the land was conveyed in trust for the benefit of its member tribes, as contemplated in the 1887 Nevada statute.
 
 
 28
 The conclusion of this first syllogism then becomes a building block for the Council's second syllogism, which is based on 25 U.S.C. Sec. 293a. The major premise here is that the Secretary of the Interior may not convey the property without the consent of the "former beneficial owner." The minor premise is that, as concluded above, the Council (in its representative capacity) is the former beneficial owner of the land. Therefore, the Council concludes, the Secretary may not convey the property without its consent.
 
 
 29
 The difficulty with the prosyllogism based on the 1887 Nevada statute, and the resulting episyllogism based on section 293a, is the Council's initial conclusion that the land was conveyed in trust for the benefit of the tribes it represents. The appellees argue that the tracts in question were never conveyed to the Indian School Commission in trust for anyone. Rather, the tracts were conveyed directly to the federal government by the private owners in fee simple. Moreover, appellees assert, the Nevada statute's language does not support the suggestion that a trust was to be implied if the land was conveyed directly to the United States, instead of to the Commission. Furthermore, appellees contend, even if a trust had been implied, the Nevada statute did not contemplate a trust for the benefit of the Council, or a particular Nevada tribe, or the Nevada Indian population in general.
 
 
 30
 The Nevada statute explicitly described the limitation of any trust: "for the benefit of such school." It is not without significance that when Congress decided to close the Stewart Indian School, only 27 students enrolled in the school came from Nevada. The remainder of the 400-student population came from other states, the majority from Arizona and California. This raises the question of whether Nevada Indians, whose children represented 6.75% of the school's population, could properly be considered the sole beneficiaries of any trust established for the benefit of the school. We think not.
 
 
 31
 A key premise of the Council's argument anchored in the Nevada statute, therefore, has no support in the statute itself. The land was not conveyed to the Indian School Commission in trust for anyone; it was conveyed to the federal government in fee simple. The only trust that was expressed or implied was (a) if the conveyance was to the Commission and (b) "for the benefit of such school," and not to any Indian tribe, band, or group. Accordingly, because the premise has no basis, the argument is not sound and its conclusion is flawed. This flawed conclusion may not then serve as the minor premise in the Council's critical contention that it is the former beneficial owner as contemplated by section 293a.
 
 
 32
 We are aware that statutes benefiting Native Americans should be construed liberally in their favor. Tyonek Native Corp. v. Secretary of the Interior, 836 F.2d 1237, 1239 (9th Cir.1988). "[I]t is a settled principle of statutory construction that statutes passed for the benefit of dependent Indian tribes are to be liberally construed, with doubtful expressions being resolved in favor of the Indians." Three Affiliated Tribes v. Wold Eng'g, 467 U.S. 138, 149, 104 S.Ct. 2267, 2275, 81 L.Ed.2d 113 (1984). Yet a rule of statutory construction may not be used to alter history. We are not faced here with a doubtful expression.
 
 
 33
 We, therefore, conclude that the Council lacks standing under this statute. The Council's complaint does not fall within the zone of interests protected or regulated by section 293a.
 
 IV.
 
 34
 We turn now to the Council's secondary argument, that it possesses standing under 25 U.S.C. Sec. 443a, which states:The Secretary of the Interior at the request of any Indian tribe, band, or group is authorized to convey to such Indian tribe, band, or group, by such means as he may deem appropriate, title to any federally owned buildings, improvements, or facilities (including any personal property used in connection with such buildings, improvements, or facilities) that are situated on lands of such tribe, band, or group or on lands reserved for the administration of its affairs, and that are no longer required by the Secretary for the administration of Indian affairs.
 
 
 35
 The Stewart School site was never set aside by treaty or statute as Indian land. The Council contends that the Stewart Indian School complex was reserved for the administration of the affairs of its member tribes. The record does not support this contention. The site was purchased for use as a school. The school served students from all over the western United States, primarily Arizona and California. We find no evidence to support the Council's assertion that the site was reserved for the administration of the affairs of its member tribes. Because the land in question is not within the purview of section 443a, the Council had no statutory rights under this section. Therefore, the Council did not have standing under section 443a to protest the transfer of the land to the state of Nevada.
 
 V.
 
 36
 Finally, the Council asserts that, in approving Nevada's application for transfer, the Secretary failed to comply with the provisions of the BIA Manual in violation of the APA, 5 U.S.C. Secs. 500-706. It bears emphasis that this argument is based on the contention that the transfer to Nevada under 25 U.S.C. Sec. 293a was tainted. The Manual sections cited by the Council in its complaint as the guidelines to which the Secretary failed to adhere, 43 BIA Manual Supp. 2, Secs. 11.18 A, B, implement section 293a. Although the Council relied somewhat on section 443a to challenge the failure of the Secretary to convey the site to the Council or its member tribes, it has not directly argued that its complaint also serves as a petition for review of the final agency action denying its request.
 
 
 37
 In contrast, the Secretary relies on section 701(a) of the APA, which states that the Act's judicial review provisions apply "except to the extent that ... statutes preclude judicial review." The Secretary argues that 25 U.S.C. Sec. 293a precludes review because it limits the right to challenge transfers to former beneficial owners. The Supreme Court has told us that "Congress will be presumed to have intended judicial review of agency action to be available unless there is 'persuasive reason' to believe otherwise." United States v. Fausto, --- U.S. ----, 108 S.Ct. 668, 675, 98 L.Ed.2d 830 (1988).
 
 
 38
 We need not decide whether section 293a precludes judicial review in this case. Nor need we decide whether there is persuasive reason to believe Congress did not intend judicial review to be available. Instead we determine that the Council has failed to satisfy the statutory requirements for standing under the APA. The standing requirement for challenging the conduct of a federal agency under the APA is set forth in 5 U.S.C. Sec. 702. See Preston v. Heckler, 734 F.2d 1359, 1364 (9th Cir.1984). Section 702 provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."
 
 
 39
 In Data Processing, 397 U.S. at 152-53, 90 S.Ct. at 829-30, the Court held that, in order to meet the standing requirement of section 702, "the interest sought to be protected by the complainant [must] arguably [be] within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Subsequently, the Court said that the holding in Data Processing includes a requirement that "the plaintiff had been injured in fact by the action he sought to have reviewed." Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 39, 96 S.Ct. 1917, 1924-25, 48 L.Ed.2d 450 (1976); see also Sierra Club v. Morton, 405 U.S. 727, 732-33, 92 S.Ct. 1361, 1364-65, 31 L.Ed.2d 636 (1972); Fair v. E.P.A., 795 F.2d 851, 854 (9th Cir.1986).
 
 
 40
 As we have shown above, the interest sought to be protected by the Council is not within the zone of interests protected by the statutes in question, 25 U.S.C. Sec. 293a and 25 U.S.C. Sec. 443a. The BIA Manual sections allegedly violated by the Secretary implement Sec. 293a. Because the Council has no rights protected by Sec. 293a, it has no standing to protest the Secretary's alleged failure to properly implement that statute.[1]
 
 VI.
 
 41
 Because of the view we take, we need not reach the merits of the case that were addressed by the district court. For the foregoing reasons, the judgment of the district court dismissing the complaint for lack of standing will be affirmed.
 
 
 42
 AFFIRMED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 Neither the complaint nor the briefs represent that the Council made any attempt to have the Secretary of the Interior review the decision or procedures of the BIA. The record does not disclose the nature of the official action approving Nevada's application for transfer of the school site, the level at which the decision was made, or whether an administrative appeal was lodged. Nor does it suggest that no procedure for administrative review was available. Even if the Council had surmounted the standing barrier, which it has not, there is a question whether it would still be barred from judicial relief for failure to exhaust administrative remedies