June R. BENALLY; Theodore Bedonie; Billy C. Adeki; Mary Yesslith; Harvey Begay; Mae Horseson; Mary Jane Chissie; Catherine Joe, Plaintiffs–Appellants,

v.

Donald P. HODEL; Ross O. Swimmer, in his individual capacity and as Assistant Secretary Indian Affairs, United States Department of Interior; Daniel L. Jackson, in his individual capacity and as Special Assistant to Assistant Secretary Indian Affairs, United States Department of Interior; Navajo and Hopi Relocation Commission, an independent executive agency of the United States; Ralph A. Watkins, Jr., in his individual capacity and as Chairman of the Navajo and Hopi Indian Relocation Commission; Hawley Atkinson, in his individual capacity and as Commissioner of the Navajo and Hopi Indian Relocation Commission; Sandra Massetto, in her individual capacity and as Commissioner of the Navajo and Hopi Indian Relocation Commission; United States of America, Defendants–Appellees.

No. 88–15244.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1989.

Decided Sept. 13, 1990.

As Amended on Denial of Rehearing July 31, 1991.

As Amended Oct. 1, 1991.

Helen A. Tuddenham and David L. Nash, Navajo–Hopi Legal Services Program, Tuba City, Ariz., for plaintiffs-appellants.

Michael P. Healy, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before TANG, HALL and BRUNETTI, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellants, individual members of the Navajo Tribe, timely appeal from the district court's order dismissing their first amended complaint on the ground that they lack standing. We affirm.

I

In their amended complaint, appellants allege that the Secretary of the Interior, other agents of the Department of the Interior, and the Navajo–Hopi Relocation Commission ("the Relocation Commission")[1] have failed to comply with the mandates of the Navajo and Hopi Indian Settlement Act ("the Settlement Act"), 25 U.S.C. § 640d *et seq.*, and the Uniform Relocation Assistance and Real Property Acquisition Act of 1970 ("the URA"), 42 U.S.C. § 4601 *et seq.*, in the relocation of Navajo individuals from Hopi land.[2] Appellants seek declaratory and injunctive relief. Their goal is to halt the relocation of Navajos and the expenditure of funds related to relocation until the alleged statutory and constitutional requirements are met.

---

1. The Relocation Commission is an independent federal agency created by Congress pursuant to 25 U.S.C. § 640d–11 for the purpose of carrying out the relocation of Navajo and Hopi tribal members.

2. Specifically, they claim that appellees 1) failed to submit to Congress the type of detailed plan and report required by 25 U.S.C. § 640d–12; 2) failed to establish a uniform policy for the fair

Congress enacted the 1974 Settlement Act to resolve the longstanding dispute between the Navajo and Hopi Tribes over certain tracts of land that had earlier been designated as reservations. The Settlement Act provided for the appointment of a mediator to assist in negotiating a settlement and partition of those areas of the 1882 Reservation area that were determined to be jointly held by the Navajo and Hopi tribes in *Healing v. Jones*, 210 F.Supp. 125 (D.Ariz.1962), *aff'd per curiam*, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963). *See* 25 U.S.C. § 640d. The Settlement Act also granted the district court residual authority to make a final partition of the joint use land in the event that the mediator's efforts failed. *See id.* § 640d-3. The district court ultimately had to exercise this residual authority; it entered a final partition in 1977, which we approved in 1980. *See Sekaquaptewa v. MacDonald*, 626 F.2d 113 (9th Cir.1980).

The Settlement Act also provided for judicial resolution of land disputes pertaining to a second parcel of land, the 1934 Reservation area. It provided that either tribe could bring suit against the other "through the chairman of its tribal council for and on behalf of the tribe," 25 U.S.C. § 640d-7(a), to determine the tribes' respective interests in the 1934 Reservation area land, *see id.*, as well as to resolve supplemental actions for accounting, fair value of grazing, and claims for damages to the land, *see id.* § 640d-7(c). The Settlement Act also authorized the tribal chairmen to bring these supplemental actions regarding the 1882 Reservation land in the wake of partition. *See id.* § 640d-17(a). Finally, with regard to both parcels of land, the Settlement Act provided that

> Either tribe may institute such further original, ancillary, or supplemental actions against the other tribe as may be necessary or desirable to insure the quiet and peaceful enjoyment of the reservation lands of the tribes by the tribes and the members thereof, and to fully accomplish all objects and purposes of this subchapter. Such actions may be commenced in the District Court by either tribe against the other, acting through the chairman of its tribal council, for and on behalf of the tribe, including all villages, clans, and individual members thereof.

*Id.* § 640d-17(c); *see id.* § 640d-7(c) (applying § 640d-17(c) to the 1934 Reservation land). Although these provisions are not directly implicated in the present action by virtue of the fact that this is not an intertribal suit, they nonetheless inform the parties' debate.

Congress understood when it passed the Settlement Act that certain individuals would have to move once the disputed lands were partitioned. It therefore included in the Settlement Act a provision establishing a three-member, independent Relocation Commission to plan relocation and disburse relocation benefits to those affected. *See id.* §§ 640d-11 to 640d-15. A recent amendment to the Settlement Act establishes that "appeals from any eligibility determination of the Relocation Commission ... shall be brought in the United States District Court for the District of Arizona." *Id.* § 640d-14(g). Even before passage of this amendment, however, we allowed an individual to appeal from such

and equitable treatment of Navajos displaced as a result of 25 U.S.C. § 640d *et seq.;* and 3) are purporting to carry out the relocation of Navajos currently residing on Hopi land in the absence of statutory authorization or in a way not in compliance with the dictates of 25 U.S.C. § 640d *et seq.* They also claim that the United States 4) violated the due process clause by including a change in the method by which relocation benefits are determined in an appropriations measure, or, alternatively, effected a taking without just compensation by failing to compensate them separately for their habitation and improvements when determining benefit levels; 5) violated the equal protection clause by passing 25 U.S.C. § 640d-10(h), which creates "a sub-class of relocatees who are the only Navajos eligible to move to the 'New Lands.'" Finally, they claim that 6) the Relocation Commission has failed to provide the preferential relocation assistance mandated by 25 U.S.C. § 640d-14(f); and 7) appellees' fifth amendment violations constitute a breach of the government's trust and fiduciary responsibilities towards native American Indians.

an eligibility determination. *See Walker v. Navajo–Hopi Indian Relocation Comm'n,* 728 F.2d 1276 (9th Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984).

■ The Settlement Act thus implicates both tribal and individual rights. In the context of an intertribal suit involving land, the tribal chairmen represent both sets of rights. *See Sekaquaptewa v. MacDonald,* 591 F.2d 1289, 1292 (9th Cir.1979) ("Finally, § 640d–17(c) provides that individual interests may be litigated in a suit between the two tribes only when those interests are represented by the tribal chairmen."); *see also Sidney v. Zah,* 718 F.2d 1453, 1457 (9th Cir.1983) (due process not violated by allowing only Navajo tribal chairman to represent tribal members in intertribal dispute over improvements on Hopi land). But in the context of a determination by the Relocation Commission of benefits eligibility, individuals are allowed to sue on behalf of their own interests. *See Bedoni v. Navajo–Hopi Relocation Comm'n,* 878 F.2d 1119 (9th Cir.1989); *Walker,* 728 F.2d 1276.

## II

■ As a preliminary matter, we reject appellee's contention that Benally is the sole appellant before this court because hers is the only name specified in the notice of appeal. The caption states "June R. Benally, et al., Plaintiffs." The body of the notice states, "Notice is hereby given that Plaintiffs, June R. Benally, et al., hereby appeal … the final judgment."

Federal Rule of Appellate Procedure 3(c) provides that a notice of appeal "shall specify the party or parties taking the appeal." In *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 317–18, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988), the Supreme Court held that Rule 3 is a jurisdictional requirement, and is met "only by some designation that gives fair notice of the specific individual or entity seeking to appeal." There, due to a clerical error, the notice of appeal specifically listed fifteen out of the sixteen plain-

tiffs. *Id.* at 313, 108 S.Ct. at 2407. The Court held that *Torres,* the unnamed plaintiff, had not satisfied the jurisdictional requirement because the term "et al." failed to provide sufficient notice to the court and the opposition of his intent to appeal. *Id.* at 317–18, 108 S.Ct. at 2409.

Ninth Circuit cases interpreting *Torres* have held that the use of "et al." in the caption is not insufficient when accompanied by a generic term, such as plaintiffs or defendants, in the body of the notice. *Cammack v. Waihee,* 932 F.2d 765, 768 (9th Cir.1991) (generic reference to "defendants" in body of notice, in addition to use of "et al." in caption, constituted sufficient notice that all defendants intended to appeal) (citing *National Center for Immigrants' Rights, Inc. v. INS,* 892 F.2d 814 (9th Cir.1989) (per curiam)); *Gilbreath v. Cutter Biological Inc.,* 931 F.2d 1320, 1323 (9th Cir.1991) (generic reference in notice of appeal to "plaintiffs, as consolidated into this cause" constituted sufficient notice that all plaintiffs intended to appeal); *National Center for Immigrants' Rights, Inc. v. INS,* 892 F.2d 814, 816 (9th Cir.1989) (generic reference to "defendants" in body of notice, coupled with use of "et al." in caption constituted sufficient notice that all defendants intended to appeal). As long as it is sufficiently clear from the notice of appeal that *all* plaintiffs or *all* defendants intend to appeal, failure to name each specifically is not fatal to the unnamed persons' appeals. *Id.* at 816–17.

In the present case, use of the term "et al.", coupled with the reference to "plaintiffs" in the body of the notice of appeal gives fair notice to the court and the opposition that *all* plaintiffs intend to appeal. Unlike *Torres,* where the caption misled the appellee by listing all but one plaintiff, this caption lists only one of the plaintiffs, designating the rest as "et al." It is sufficiently clear from the notice of appeal that all plaintiffs intended to appeal. Thus, this court has jurisdiction over the appeal and over each of the plaintiffs.[3]

---

3. *Johnson v. Trustees of the W. Conf. of Teamsters Pension Trust Fund,* 879 F.2d 651, 653 n. 1 (9th Cir.1989) is not inconsistent with this holding. In *Johnson,* there were two notices of appeal, the first naming one plaintiff, and the second naming a different plaintiff but including the term "et al." The case does not indicate whether the notices of appeal generically designated the unnamed appellants. Moreover, in combination, the notices were sufficiently unclear as to which unnamed appellants were included in the appeal, thus justifying reliance on *Torres.*

### III

Appellants seeks a declaration that the Relocation Commission is not complying with the relocation procedures described in the Settlement Act at 25 U.S.C. § 640d–11 to 640d–14. They also seek to enjoin the entire relocation process until such time that the Secretary of the Interior and the Relocation Commission comply with the requirements of the Settlement Act. The district court ruled that only the tribal chairmen may maintain an action such as this one. We review the district court's ruling on standing de novo, *e.g., Bruce v. United States,* 759 F.2d 755, 758 (9th Cir.1985), accepting as true the allegations of the complaint and construing the complaint in favor of plaintiffs-appellants. *See Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 109, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979).

Since appellants' complaint in substance challenges agency action and inaction under the Administrative Procedure Act ("the APA"), 5 U.S.C. § 702, we will not penalize them for failing to explicitly ground their complaint on the APA. *See Haddock v. Board of Dental Examiners,* 777 F.2d 462, 464–65 (9th Cir.1985) (remanding case so that appellant could pursue claims under § 1983 and the Fourteenth Amendment despite facts that complaint did not refer to § 1983 and appellant relied exclusively on Title VII on appeal).

We start with the general presumption that substantive statutes allow for review of agency action and inaction pursuant to the APA. *See Inter–Tribal Council of Nevada, Inc. v. Hodel,* 856 F.2d 1344, 1351 (9th Cir.1988), *cert. denied,* ——

U.S. ——, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989). Nonetheless, the APA has specific standing requirements which must be satisfied. "[I]n order to meet the standing requirement of section 702, 'the interest sought to be protected by the complainant [must] arguably [be] within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' " *Id.* (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)). The plaintiff must have been injured in fact by the action he seeks to have reviewed. *Id.* Moreover, the plaintiff's injury must be " 'redressable by the court.' " *Preston v. Heckler,* 734 F.2d 1359, 1364 (9th Cir.1984) (quoting *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)). This test also satisfies the minimum standing requirements of article III of the Constitution. *Id.* at 1365.

Appellants allege that the Secretary of the Interior and the Relocation Commission have failed to follow the procedures enumerated in the Settlement Act at 25 U.S.C. §§ 640d–11 to 640d–14 and the URA, 42 U.S.C. § 4601 *et seq.*[4] In particular, they allege that the report and plan submitted to Congress by the Relocation Commission did not comply with the dictates of 25 U.S.C. § 640d–12. Appellants' theory appears to be that the Settlement Act vests certain "procedural rights" in them, the violation of which is itself a sufficient injury in fact to support standing in an action alleging the defendant's violation of a statutory duty.[5] *See generally City of Davis v. Coleman,* 521 F.2d 661,

---

[4] The Settlement Act requires the Relocation Commission to reimburse heads of households required to relocate as if they were displaced persons under the URA, 25 U.S.C. § 640d–14(b)(1), and to "establish standards consistent with those established by the implementation of" the URA, *id.* § 640d–14(c).

[5] Of course, appellants can dispute in federal court a benefits determination pursuant to 25 U.S.C. § 640d–14(g). *See Bedoni,* 878 F.2d 1119; *cf. Begay v. United States,* 16 Cl.Ct. 107 (1987) (broad challenges to Settlement Act procedures made in context of claim for money damages in

light of benefits received pursuant to relocation), *aff'd,* 865 F.2d 230 (Fed.Cir.1988). But were the broad challenges asserted in this case the only ones made in such a proceeding, appellants would lack standing because it would be wholly speculative whether the relief they sought would redress their injury—inadequate relocation benefits. In *Walker,* we stated that "[i]t would be contrary to congressional intent to deny benefits to those otherwise eligible but not appearing on the list [enumerating individuals subject to relocation mandated by 25 U.S.C. § 640d–12(b)(1) ] on the grounds the list is con-

671 (9th Cir.1975). We recently stressed, however, that the mere fact that a defendant has a duty does not necessarily mean that any given plaintiff may sue to enforce compliance with that duty:

> [A] plaintiff who merely claims that a defendant violated a statutory duty does not necessarily satisfy the requirement of injury in fact in article III. Instead, we hold that the crucial inquiry in such a situation is whether a statute that imposes statutory duties creates correlative procedural rights in a given plaintiff, the invasion of which is sufficient to satisfy the requirement of injury in fact in article III. In determining whether a given statutory duty creates a correlative procedural right, we look to the statutory language, the statutory purpose, and the legislative history.

*Fernandez v. Brock*, 840 F.2d 622, 630 (9th Cir.1988). In short, the fact that the Relocation Commission must perform certain procedural duties under the Settlement Act does not by itself establish appellants' right to seek compliance with these duties.

We conclude that the Settlement Act does not create a procedural right in individual Hopi and Navajo Indians. Nothing in either the language of the Settlement Act or its legislative history suggests that individuals can make the sort of broad challenges that appellants assert in this action. Although we are mindful that 25 U.S.C.

§ 640d–14(g) allows individuals to appeal benefits eligibility determinations in court, we do not agree that this provision establishes the right of individuals to challenge the broad procedural framework of the Settlement Act, especially where, as here, the complaint alleges violations that affect all relocatees generally.

Instead, we agree with the district court that the Settlement Act vests an implicit procedural right in the chairmen of the Navajo and Hopi tribes to bring the type of claims at issue here. The Settlement Act establishes that it is the tribal chairmen who can vindicate individual rights in an intertribal dispute "to fully accomplish all objects and purposes of" the Settlement Act, 25 U.S.C. § 640d–17(c); *see also Zah*, 718 F.2d at 1457 (tribal chairmen, not individuals, have standing in "a supplemental proceeding to effectuate a judicial land settlement"). It is this broad right of action which we read as implying a procedural right in tribal chairmen to challenge government compliance with the dictates of the Settlement Act. For it cannot seriously be disputed that resolution of the intertribal dispute necessarily entails the relocation of certain individuals and the payment of compensatory benefits to them. As such, the challenges in this case are on the order of a supplemental proceeding to effectuate the land settlements between the tribes. Moreover, in passing the Settle-

---

clusive." *Walker*, 728 F.2d at 1280. As *Walker* illustrates, submission of an accurate report and relocation plan to Congress is not a necessary prerequisite to the ultimate award of relocation benefits. Thus, even were we to conclude that the Relocation Commission violated its statutory duty to report to Congress, we could not be confident that the Relocation Commission would alter its award in a subsequent benefits determination.

The situation thus would be distinguishable from those in which we have held that parties may challenge agency action on the ground that judicial relief would make them eligible for benefits they otherwise would have no chance of being awarded. *See, e.g., Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 506–08 (9th Cir.1988) (film makers and companies may challenge United States Information Agency's regulations governing certification of films since such certification is an essential prerequisite to obtaining benefits under the Beirut Agreement governing educational audio-visual materials). It would also be distinguishable from the situation presented in *Preston v. Heckler*, 734 F.2d 1359

(9th Cir.1984). In *Preston,* we approved standing where an agency's failure to promulgate statutorily required separate and independent standards for evaluating the employment qualifications of Indians made it impossible to say whether, had the standards been established, the plaintiff would have been eligible to compete for a job as a social worker. *See id.* at 1365–66. Nonetheless, it was clear in *Preston* that the plaintiff had no chance of being considered for the position of social worker without adoption of separate standards. Here, by contrast, appellants would be eligible for adequate relocation compensation even if the Relocation Commission had failed to submit to Congress the report and plan required by 25 U.S.C. § 640d–12.

Moreover, as discussed *infra,* broad challenges affecting all Navajo or Hopi are appropriately pursued by the Chairmen of the respective tribes, not by individual members of the tribes. This is the case even if an individual member attempts to clothe her broad claim in the guise of an individualized challenge to relocation benefits.

**1200**

ment Act, "Congress was concerned with a speedy and fair resolution of the dispute between the tribes." *Sekaquaptewa*, 591 F.2d at 1293 n. 9; *see also* H.R.Conf.Rep. No. 1094, 96th Cong., 2d Sess. 11 (1980) (discussing 1980 amendments to Settlement Act: "Where there may be ambiguities in the terms of the Act, it is the intent of the committee that those ambiguities be construed in a manner that will achieve litigation-free, expeditious implementation of the Act and relocation of families."). Surely the dispute between the Navajos and Hopis would linger even longer if every individual affected by the relocation process could challenge the methods by which relocation is achieved.

We recognize that the judicial resolution of relocation benefits is itself a supplemental proceeding to effectuate the settlement between the tribes. But it made sense for Congress to single out this type of action for individual standing: each household might have a discrete, singular quarrel with the Relocation Commission over the fair market valuation of its home as well as over the costs of relocation. The allegations in appellants' complaint, however, are general and appear to be of equal concern to all relocatees. Congress decided that individual rights would be vindicated by the tribal chairmen in the context of intertribal disputes. We conclude that Congress meant for tribal chairmen also to challenge the government's application of the Settlement Act on behalf of the generalized rights of relocatees. Indeed, the Navajo chairman already has brought a parallel lawsuit containing many of the allegations at stake in the instant case.

### IV

For the reasons discussed above, the judgment of the district court is AFFIRMED.