718 F.2d 1453
 Ivan L. SIDNEY, Chairman of the Hopi Tribal Council of the
Hopi Indian Tribe, For and On Behalf of the Hopi Indian
Tribe, Including All Villages and Clans Thereof, and on
Behalf of Any and All Hopi Indians Claiming Any Interest In
the Lands Described In the Executive Order Dated December
16, 1882, Plaintiff-Appellant/Cross-Appellee,
v.
Peter ZAH,* Chairman of the Navajo Tribal
Council of the Navajo Indian Tribe For and On Behalf of the
Navajo Indian Tribe, Including All Villages and Clans
Thereof, and On Behalf of Any and All Navajo Indians
Claiming Any Interest In the Lands Described In the
Executive Order Dated December 16, 1882,
Defendant-Appellee/Cross-Appellant,
and
William French Smith, Attorney General of the United States,
on Behalf of the United States, Defendant.
 Nos. 82-5375, 82-5502.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 15, 1983.
Decided Oct. 25, 1983.
 
 Scott C. Pugsley, Boyden, Kennedy & Romney, Salt Lake City, Utah, for plaintiff-appellant/cross-appellee.
 Louis Denetsosie, Window Rock, Ariz., for defendant-appellee/cross-appellant.
 Appeal from the United States District Court for the District of Arizona.
 Before SCHROEDER and BOOCHEVER, Circuit Judges and EAST,** District Judge.
 SCHROEDER, Circuit Judge.
 
 
 1
 This is an appeal by the Hopi Tribe, through its representative chairman, Ivan L. Sidney, and a cross-appeal by the Navajo Tribe, through its representative chairman, Peterson Zah, from a contempt order entered against the Navajo Tribe for its failure to remove specified construction built by Navajo individuals on Hopi land. In their appeal the Hopi contend that certain Navajo construction was erroneously omitted from the scope of the court's contempt order. The Navajo Tribe cross-appeals from the contempt order as well as from a declaratory judgment prohibiting all new Navajo construction on Hopi partition land. The Navajo argue that they are without power to comply with the contempt order or with the declaratory judgment because they have no jurisdiction over tribal members living on Hopi land. We affirm the district court's order and judgment.
 
 
 2
 * BACKGROUND
 
 
 3
 Judicial involvement in the historic land dispute between the Hopi and Navajo Tribes began in 1958, when Congress waived the tribes' sovereign immunity and authorized either tribe to initiate a quiet title action to settle their conflicting claims to reservation land. Act of July 22, 1958, Pub.L. No. 85-547, 72 Stat. 403. The Hopi brought suit, and a three-judge district court held that the Hopi were entitled to the exclusive possession of a portion of the reservation. The court also held that both the Navajo and Hopi held joint, undivided, and equal interests to the remainder of the reservation,[1] and thus, created the joint use area (JUA). Healing v. Jones, 210 F.Supp. 125 (D.Ariz.1962), aff'd, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963) (per curiam) (Healing).
 
 
 4
 Both tribes found their co-tenancy in the JUA unsatisfactory and unworkable. The Hopi Tribe, claiming that the Navajos denied members of the Hopi Tribe the right to equal use of the JUA, petitioned the district court in 1970 for an order of compliance with the Healing judgment.[2] A subsequent order which, in part, required a reduction of Navajo construction in the JUA was affirmed by this court. Hamilton v. MacDonald, 03 F.2d 1138 (9th Cir.1974). The district court then cited the Navajo for contempt for failing to control construction as ordered. We affirmed this holding, too. Sekaquaptewa v. MacDonald, 544 F.2d 396 (9th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977).
 
 
 5
 Congress reentered the dispute by enacting another statute, Act of Dec. 22, 1974, Pub.L. No. 93-531, 88 Stat. 1712 (1974 Settlement Act) (codified as amended 25 U.S.C. Secs. 640d to 640d-28), which provided for the appointment of a mediator to assist in negotiating a settlement and partition of the JUA. The district court was given authority, if settlement efforts failed, to make a final partition of the disputed reservation area; the district court entered a judgment of partition in 1977. This judgment included prohibitions against new Navajo construction on Hopi partition land as well as against new Hopi construction on Navajo partition land. On appeal, the Navajo disputed the boundaries of the partition order. We approved the theory of equality underlying the partition, but remanded the case for further proceedings concerning the boundary issue. Sekaquaptewa v. MacDonald, 575 F.2d 239 (9th Cir.1978). The district court entered another judgment of partition, also containing construction prohibitions, which we then approved. Sekaquaptewa v. MacDonald, 626 F.2d 113 (9th Cir.1980).
 
 
 6
 The orders challenged here are based on the construction prohibitions contained in the district court's initial 1977 judgment of partition. In 1980, the court, at the Hopi's request, issued an injunction ("1980 Construction Order") reaffirming the prohibition against new construction on partitioned JUA land and ordering the Navajo Tribe to cause the removal and disassembly of several structures built on Hopi partition land after the original partition was entered in 1977, but before the Hopi motion was filed in 1979 ("old-new" construction). In response to that injunction, the Navajo Tribe disseminated information, requesting tribal members to remove non-compliant construction from Hopi land and to refrain from building any new structures.
 
 
 7
 In 1981, the Hopi, contending that Navajo tribal members had not removed their "old-new" construction from Hopi partition land, moved for a contempt order against the Navajo Tribe. The district court granted this motion, finding the Navajo Tribe to be in contempt for failing to cause the removal of the "old-new" construction. In this "1982 Construction Order," the district court directed the Navajo Tribe again to cause the removal of the "old-new" construction as well as to cause the removal of Navajo construction which had taken place between 1979 and 1981 ("new-new" construction). The court also found that the Hopi were barred from seeking the removal of an additional, allegedly "old-new" structure (structure 75), because it was built prior to 1979 and had not been included in the 1979 injunction proceeding. This appeal and cross-appeal followed.
 
 II
 DISCUSSION
 A. The Navajo Appeal[3]
 
 8
 The Navajo Tribe contends that it cannot be found in contempt because it lacks the ability to comply with the district court's order to cause the disassembly and removal of structures built on Hopi partition lands. Specifically, the Tribe argues that it has no sovereign jurisdiction over members who live on what is now Hopi land and that, even if the Tribe had such power when the land was considered a joint use area, any jurisdiction was divested by the district court's 1977 partition order and by Congress when it enacted 25 U.S.C. Sec. 640d-9(e)(1)(B).[4]
 
 
 9
 In rejecting the Navajo argument, the district court properly stressed that since the Tribe represents its membership by Congressional delegation, the Tribe is the entity to which orders effectuating the partition must be directed. See 25 U.S.C. Secs. 640d-17(a), (c) (each tribe authorized to commence or defend actions necessary to effectuate partition and insure quiet enjoyment of partitioned land); cf. 25 U.S.C. Sec. 640d-7(a). The Navajo Tribe therefore was obligated to carry out the court's order.
 
 
 10
 The Navajo nevertheless claim that because tribal sovereignty "stops at the border," the Tribe is unable to comply. We realize that there is indeed "a significant geographical component to tribal sovereignty." White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 151, 100 S.Ct. 2578, 2587, 65 L.Ed.2d 665 (1980); accord, Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 142, 102 S.Ct. 894, 904, 71 L.Ed.2d 21 (1982). The 1980 amendments to the Settlement Act clearly provide that each tribe shall have full and complete jurisdiction and authority over lands it acquired in the district court's 1977 judgment of partition. See 25 U.S.C. Sec. 640d-9(e)(1)(B).[5]
 
 
 11
 The issue here, however, does not concern the extraterritorial application of tribal law to which section 640-9(e)(1)(B) is directed. This case concerns the Navajo Tribe's responsibility to effectuate Congress' express intent to resolve the land dispute between the Hopi and Navajo tribes expeditiously through judicial proceedings enforcing partition. See 25 U.S.C. Sec. 640d-3(b). Congress has long been aware that the partition process necessary to resolve the Navajo-Hopi dispute would create a situation in which tribal members would be residing off-reservation. See, e.g., S.Rep. No. 1177, 93d Cong., 2d Sess. 14 (1974); H.R.Rep. No. 909, 93d Cong., 2d Sess. 9 (1974). To remedy that situation it attempted to provide fully in both the 1974 Act and the 1980 Amendments for the relocation and resettlement of tribal members. See 25 U.S.C. Secs. 640d-10 to 640d-15. The order questioned here is a part of that judicial partition and congressionally authorized relocation and resettlement process; the Tribe remains the entity responsible for compliance. The partition boundary therefore does not limit the Navajo Tribe's authority to enforce this judicial order.
 
 
 12
 We further observe that reservation boundaries are not considered absolute limitations on tribal power in other contexts as well. See White Mountain Apache Tribe, supra, 448 U.S. at 151, 100 S.Ct. at 2587. As the Supreme Court has stated, Indian tribes "are unique aggregations possessing attributes of sovereignty over both their members and their territory." Merrion, supra, 455 U.S. at 140, 102 S.Ct. at 903 (quoting United States v. Mazurie, 419 U.S. 544, 557, 95 S.Ct. 710, 711, 42 L.Ed.2d 706 (1975) (emphasis supplied)). Membership is therefore another aspect of tribal sovereignty which exists separate and apart from the territorial jurisdiction of the tribe. See F. Cohen Handbook of Federal Indian Law 246 (1982 ed.). Our circuit has recognized this principle in both United States v. Washington, 520 F.2d 676 (9th Cir.1975), aff'g 384 F.Supp. 312 (W.D.Wash.1974), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976), and Settler v. Lameer, 507 F.2d 231 (9th Cir.1974). In those cases, we affirmed the "regulatory and enforcement" jurisdiction of Indian tribes. 520 F.2d at 686; 507 F.2d at 239-40. See also United States v. Michigan, 471 F.Supp. 192, 270-73 (W.D.Mich.1979).
 
 
 13
 The Navajo Tribe also argues that the district court's contempt order and declaratory judgment must be reversed so that Navajo homeowners who are residing on Hopi land can be given notice and an opportunity to be heard. The Tribe maintains that the order requiring the Tribe to enforce the injunction creates a conflict of interest between the Tribe and these individuals, and that due process is therefore violated by adjudicating their rights through inadequate representatives. See Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961) (due process requires adequate representation); Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 833-34 (9th Cir.1982).
 
 
 14
 We have, however, on several occasions, rejected similar claims and reaffirmed the congressionally authorized representative capacity of the tribal chairmen in these proceedings. See Healing v. Jones, supra, 210 F.Supp. at 129 n. 2 (citing Act of July 22, 1958, Pub.L. No. 85-547, 72 Stat. 403).[6] In United States v. Kabinto, 456 F.2d 1087 (9th Cir.), cert. denied, 409 U.S. 842, 93 S.Ct. 40, 34 L.Ed.2d 81 (1972), we affirmed the res judicata effect of the Healing judgment on individual Navajos and rejected their assertion that they were not adequately represented by the Navajo tribal chairman. Similarly, in Sekaquaptewa v. MacDonald, 544 F.2d 396 (9th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977), we held that individual Navajos were not entitled to notice and hearing before their grazing permits were cancelled because the Tribe adequately represented its members. Id. at 403. We stated "[t]here is no substantial basis for the claim that Congressional action has the effect of depriving the Navajo of their property without due process of law." Id. (citing Winton v. Amos, 255 U.S. 373, 391-92, 41 S.Ct. 342, 349-50, 65 L.Ed. 684 (1920)). Finally, in Sekaquaptewa v. MacDonald, 591 F.2d 1289 (9th Cir.1979), we refused to allow intervention by individual Navajos in a proceeding to determine rights to 1934 Act reservation lands, stating that Congress did not intend individual participation in suits authorized by 25 U.S.C. Sec. 640d-7(a), which parallels the congressional authorization of these proceedings in 25 U.S.C. Sec. 640d-17(c). We also noted that under 25 U.S.C. Sec. 640d-17(c), "individual interests may be litigated in a suit between the two tribes only when those interests are represented by the tribal chairmen." 591 F.2d at 1292.
 
 
 15
 Given these precedents, we must conclude that due process is not violated by allowing Chairman Zah to represent the Navajo tribal members in this case. While the Navajo argue that the congressionally authorized representation in section 640d-17(c) is limited to suits involving determinations of land interests, and not improvements, this action is, after all, a supplemental proceeding to effectuate a judicial land settlement; the purpose is therefore the same.
 
 
 16
 The Navajo Tribe additionally challenges that part of the court's order concerning removal of construction on the ground that such mandatory injunctive relief is unnecessary. Specifically, the Tribe argues that the Hopi have an adequate remedy at law because 25 U.S.C. Sec. 640d-15(a) provides complete monetary compensation for the use of Hopi partition lands by Navajo tribal members and that the Hopi therefore will suffer no irreparable harm from this use.
 
 
 17
 We note initially that this portion of the order merely reaffirms the court's 1980 injunction. The Tribe did not appeal the 1980 ruling. Thus, the merits of the 1980 injunction cannot be challenged in this appeal from the district court's finding of contempt for failing to comply with that order. See Maggio v. Zeitz, 333 U.S. 56, 68-70, 68 S.Ct. 401, 407-08, 92 L.Ed. 476; Halderman v. Pennhurst State School & Hospital, 673 F.2d 628, 636-37 (3d Cir.1982); Florida Steel Corp. v. NLRB, 648 F.2d 233, 238 n. 10 (5th Cir. Unit B 1981); see generally Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) (collateral attack of injunction on constitutional grounds denied when no appeal taken).
 
 
 18
 Even if that part of the injunction now appealed relating to "new-new" construction could be attacked, we would be compelled to recognize that use of such mandatory injunctive relief to effectuate the judicial settlement of this Navajo-Hopi dispute is well established. For example, in Hamilton v. MacDonald, 503 F.2d 1138 (9th Cir.1974), this court, in affirming the propriety of the 1972 order of compliance which included a limitation concerning Navajo construction on the JUA, stated that "the building restriction is simply an appropriately designed equitable remedy to allow the Hopi equal possession to which they are entitled." Id. at 1150. Similarly, in both cases in which we reviewed the district court's 1977 judgment of partition, we were confronted with injunctive orders prohibiting new construction on Hopi partition land. See Sekaquaptewa v. MacDonald, 575 F.2d 239 (9th Cir.1978), after remand 626 F.2d 113 (9th Cir.1980). In neither of these cases did we disapprove of the use of the district court's equitable injunctive powers to effectuate the congressionally mandated settlement process. Thus the propriety of using such mandatory injunctive relief in these supplemental Healing proceedings clearly is entitled to be regarded, at the very least, as the law of the case. See Liberty Mutual Insurance Co. v. EEOC, 691 F.2d 438, 441 (9th Cir.1982) (law of case applied to issue decided explicitly or by necessary implication); cf. Hamilton v. MacDonald, 503 F.2d 1138, 1144-45 (9th Cir.1974) (application of law of the case doctrine to district court order that Navajo and Hopi must share JUA equally). Because the Navajo Tribe presented no substantially new evidence or contrary controlling authority on the applicable issues of law, nor demonstrated that our previous decisions were clearly erroneous and that their application here would work a manifest injustice, we follow the law of the case. United States v. Dann, 706 F.2d 919, 923-24 (9th Cir.1983); Kimball v. Callahan, 590 F.2d 768, 771-72 (9th Cir.), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).
 
 B. The Hopi Appeal
 
 19
 The Hopi appeal concerns that part of the district court's order dealing with a particular structure, "structure 75," which had been built prior to 1979, but which had not been included in the Hopi Tribe's September 1979 motion. That motion resulted in the 1980 injunction requiring removal of "old-new" (i.e. pre-September 14, 1979) construction. The district court, in this proceeding, held that since the Hopi had fair opportunity to contest the structure in the prior proceeding and failed to do so, the Hopi Tribe was precluded from now raising the matter.
 
 
 20
 While the district court used the phrase "collateral estoppel," which describes the doctrine applying to preclusion of issues actually litigated, see Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970-73, 59 L.Ed.2d 210 (1979), the court was actually applying the principle of res judicata, or claim preclusion, which bars litigation of all matters which could have been raised in support of a cause of action previously litigated. Nevada v. United States, --- U.S. ----, ----, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983); Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); Costantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 570, 74 L.Ed.2d 932 (1983). See Restatement (Second) of Judgments Secs. 18, 19, 24, 25 (1982).
 
 
 21
 In holding that the Hopi Tribe was precluded from raising matters which could have been raised in the previous action, the district court necessarily viewed the Hopi claim for removal of "old-new" construction as one cause of action. This clearly was appropriate, since the record reflects that both the Hopi Tribe in its presentation of the matter, and the court in its disposition, sought to resolve in one proceeding the scope of the injunctive relief available with respect to structures erected in the narrow time span between February 10, 1977 and September 14, 1979. The issues to be resolved were closely related in time, space and origin; they were treated as a single trial unit which all parties at the time expected, thus fully satisfying the pragmatic standard adopted by the Restatement (Second) of Judgments Sec. 24 (1982), and recently discussed with approval by the United States Supreme Court in Nevada v. United States, supra, --- U.S. at ----, 103 S.Ct. at 2918-19 & n. 12. The issues with respect to structure 75 also arise out of the same "transactional nucleus of facts," the criteria most stressed in our decisions. Costantini, supra, 681 F.2d at 1201-02; Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir.1980); accord Hatchitt v. United States, 158 F.2d 754 (9th Cir.1946). See generally 1B J. Moore, Moore's Federal Practice p 0.410 at 1152-63 (2d ed. 1982 & Supp.1982-1983).
 
 
 22
 We therefore agree with the district court that the additional relief the Hopi Tribe seeks in connection with structure 75 is part of the same cause of action litigated in the 1980 injunction proceeding, and barred by the general rule prohibiting the splitting of a cause of action. See Restatement (Second) of Judgments Secs. 24 and 26.
 
 
 23
 While the Hopi argue that we should make an exception on grounds of fairness, such exceptions to claim preclusion are narrow. Restatement (Second) of Judgments Sec. 26 (1982); 1B Moore's Federal Practice, supra, p 0.410 at 1167-70; 18 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure Sec. 4415 (1982). The record in this case contains testimony of the Director of the Office of Hopi Partition Land that as an employee of the Hopi Tribe he discovered structure 75 before the Hopis filed their motion for an injunction on September 14, 1979, and that as part of his duties he monitored all construction on Hopi partition land. The Hopi therefore cannot even successfully maintain that they were unable to know about the claim in time to present it in their 1979 motion. They fall far short of meeting any of the exceptions to the general rule against claim splitting recognized by the Restatement (Second) of Judgments Sec. 26.
 
 
 24
 The judgment of the district court is affirmed.
 
 
 
 *
 Substituted for Peter MacDonald pursuant to Fed.R.App.P. 43(c)
 
 
 **
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The reservation originally was created by Executive Order in 1882. President Chester A. Arthur set aside the land "for the use and occupancy of Moqui [Hopi] and such other Indians as the Secretary of the Interior may see fit to settle there." In 1900, 1901, and 1907, parts of that original reservation were withdrawn, by executive order for the use of the Navajo. Additionally, they were the "other Indians" which the Secretary of the Interior "saw fit" to settle on the 1882 Reservation. Each tribe therefore claimed rights to the 1882 reservation land which had not been withdrawn. See Sekaquaptewa v. MacDonald, 626 F.2d 113, 114-15 & n. 1 (9th Cir.1980)
 
 
 [2]
 We held, in an initial appeal, that the district court which rendered the Healing judgment retained equitable jurisdiction over the case to effectuate its original decree through injunctive relief and a writ of assistance. Hamilton v. Nakai, 453 F.2d 152 (9th Cir.), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972)
 
 
 [3]
 Although the procedural posture of this case is such that the Hopi are the appellants and the Navajo, the cross-appellants, we treat the tribes' respective challenges to the district court's decision in their most logical sequence. We therefore first address the Navajo Tribe's arguments concerning the propriety of the court's contempt order and declaratory judgment
 
 
 [4]
 Section 640d-9(e)(1)(B) provides:
 (e) Tribal jurisdiction over partitioned lands
 (1) Lands partitioned pursuant to this [Act] ... shall be subject to the jurisdiction of the tribe to whom partitioned and the laws of such tribe shall apply to such partitioned lands under the following schedule:
 * * *
 (B) Notwithstanding any provision of law to the contrary, each tribe shall have such jurisdiction and authority over any lands partitioned to it and all persons located thereon, ... to the same extent as is applicable to those other portions of its reservation. Such jurisdiction and authority over partitioned lands shall become effective April 18, 1981.
 This section was enacted as part of Congress' 1980 amendments to the 1974 Settlement Act. See Navajo and Hopi Indian Relocation Amendments Act of 1980, Pub.L. No. 96-305 Sec. 3, 94 Stat. 929, 930.
 
 
 [5]
 See supra note 4
 
 
 [6]
 This act, the original congressional authorization for judicial proceedings to resolve the Navajo-Hopi dispute, expressly provided that each tribe should act "through the chairmen of their respective tribal councils ...." The current act under which these proceedings have been brought, contains identical provisions. See 25 U.S.C. Secs. 640d-17(a), (c)