913 F.2d 1464
 June R. BENALLY; Theodore Bedonie; Billy C. Adeki; Mary
Yesslith; Harvey Begay; Mae Horseson; Mary Jane
Chissie; Catherine Joe, Plaintiffs-Appellants,
v.
Donald P. HODEL; Ross O. Swimmer, in his individual
capacity and as Assistant Secretary Indian Affairs, United
States Department of Interior; Daniel L. Jackson, in his
individual capacity and as Special Assistant to Assistant
Secretary Indian Affairs, United States Department of
Interior; Navajo and Hopi Relocation Commission, an
independent executive agency of the United States; Ralph A.
Watkins, Jr., in his individual capacity and as Chairman of
the Navajo and Hopi Indian Relocation Commission; Hawley
Atkinson, in his individual capacity and as Commissioner of
the Navajo and Hopi Indian Relocation Commission; Sandra
Massetto, in her individual capacity and as Commissioner of
the Navajo and Hopi Indian Relocation Commission; United
States of America, Defendants-Appellees.
 No. 88-15244.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 4, 1989.
Decided Sept. 13, 1990.
 
 Helen A. Tuddenham and David L. Nash, Navajo-Hopi Legal Services Program, Tuba City, Ariz., for plaintiffs-appellants.
 Michael P. Healy, Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before TANG, HALL and BRUNETTI, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Appellants, individual members of the Navajo Tribe, timely appeal from the district court's order dismissing their first amended complaint on the ground that they lack standing. We affirm.
 
 
 2
 * In their amended complaint, appellants allege that the Secretary of the Interior, other agents of the Department of the Interior, and the Navajo-Hopi Relocation Commission ("the Relocation Commission")[1] have failed to comply with the mandates of the Navajo and Hopi Indian Settlement Act ("the Settlement Act"), 25 U.S.C. Sec. 640d et seq., and the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("the URA"), 42 U.S.C. Sec. 4601 et seq., in the relocation of Navajo individuals from Hopi land.[2] Appellants seek declaratory and injunctive relief. Their goal is to halt the relocation of Navajos and the expenditure of funds related to relocation until the alleged statutory and constitutional requirements are met.
 
 
 3
 Congress enacted the 1974 Settlement Act to resolve the longstanding dispute between the Navajo and Hopi Tribes over certain tracts of land that had earlier been designated as reservations. The Settlement Act provided for the appointment of a mediator to assist in negotiating a settlement and partition of those areas of the 1882 Reservation area that were determined to be jointly held by the Navajo and Hopi tribes in Healing v. Jones, 210 F.Supp. 125 (D.Ariz.1962), aff'd per curiam, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963). See 25 U.S.C. Sec. 640d. The Settlement Act also granted the district court residual authority to make a final partition of the joint use land in the event that the mediator's efforts failed. See id. Sec. 640d-3. The district court ultimately had to exercise this residual authority; it entered a final partition in 1977, which we approved in 1980. See Sekaquaptewa v. MacDonald, 626 F.2d 113 (9th Cir.1980).
 
 
 4
 The Settlement Act also provided for judicial resolution of land disputes pertaining to a second parcel of land, the 1934 Reservation area. It provided that either tribe could bring suit against the other "through the chairman of its tribal council for and on behalf of the tribe," 25 U.S.C. Sec. 640d-7(a), to determine the tribes' respective interests in the 1934 Reservation area land, see id., as well as to resolve supplemental actions for accounting, fair value of grazing, and claims for damages to the land, see id. Sec. 640d-7(c). The Settlement Act also authorized the tribal chairmen to bring these supplemental actions regarding the 1882 Reservation land in the wake of partition. See id. Sec. 640d-17(a). Finally, with regard to both parcels of land, the Settlement Act provided that
 
 
 5
 Either tribe may institute such further original, ancillary, or supplemental actions against the other tribe as may be necessary or desirable to insure the quiet and peaceful enjoyment of the reservation lands of the tribes by the tribes and the members thereof, and to fully accomplish all objects and purposes of this subchapter. Such actions may be commenced in the District Court by either tribe against the other, acting through the chairman of its tribal council, for and on behalf of the tribe, including all villages, clans, and individual members thereof.
 
 
 6
 Id. Sec. 640d-17(c); see id. Sec. 640d-7(c) (applying Sec. 640d-17(c) to the 1934 Reservation land). Although these provisions are not directly implicated in the present action by virtue of the fact that this is not an intertribal suit, they nonetheless inform the parties' debate.
 
 
 7
 Congress understood when it passed the Settlement Act that certain individuals would have to move once the disputed lands were partitioned. It therefore included in the Settlement Act a provision establishing a three-member, independent Relocation Commission to plan relocation and disburse relocation benefits to those affected. See id. Sec. 640d-11 to 640d-15. A recent amendment to the Settlement Act establishes that "appeals from any eligibility determination of the Relocation Commission ... shall be brought in the United States District Court for the District of Arizona." Id. Sec. 640d-14(g). Even before passage of this amendment, however, we allowed an individual to appeal from such an eligibility determination. See Walker v. Navajo-Hopi Indian Relocation Comm'n, 728 F.2d 1276 (9th Cir.), cert. denied, 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984).
 
 
 8
 The Settlement Act thus implicates both tribal and individual rights. In the context of an intertribal suit involving land, the tribal chairmen represent both sets of rights. See Sekaquaptewa v. MacDonald, 591 F.2d 1289, 1292 (9th Cir.1979) ("Finally, Sec. 640d-17(c) provides that individual interests may be litigated in a suit between the two tribes only when those interests are represented by the tribal chairmen."); see also Sidney v. Zah, 718 F.2d 1453, 1457 (9th Cir.1983) (due process not violated by allowing only Navajo tribal chairman to represent tribal members in intertribal dispute over improvements on Hopi land). But in the context of a determination by the Relocation Commission of benefits eligibility, individuals are allowed to sue on behalf of their own interests. See Bedoni v. Navajo-Hopi Relocation Comm'n, 878 F.2d 1119 (9th Cir.1989); Walker, 728 F.2d 1276.
 
 II
 
 9
 As a preliminary matter, we find that Benally is the sole appellant before this court, as she is the only party who has complied with the specificity requirement of Fed.R.App.P. 3(c). This requirement is met "only by some designation that gives fair notice of the specific individual or entity seeking to appeal." Torres v. Oakland Scavenger Co., 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988). Benally is the only appellant whose name appears on the notice of appeal. The seven other appellants specifically named in the amended complaint are only referred to generally as "et al." in the notice of appeal. This phrase "utterly fails to provide [the requisite fair] notice [to the opposition and to the court]." Id. This failure to name a party in a notice of appeal is "more than excusable 'informality'; it constitutes a failure of that party to appeal." Id. at 314, 108 S.Ct. at 2407; see also Johnson v. Trustees of the W. Conf. of Teamsters Pension Trust Fund, 879 F.2d 651, 653 n. 1 (9th Cir.1989). Accordingly, we find that these seven other appellants are not parties to this appeal.
 
 III
 
 10
 Benally seeks a declaration that the Relocation Commission is not complying with the relocation procedures described in the Settlement Act at 25 U.S.C. Sec. 640d-11 to 640d-14. She also seeks to enjoin the entire relocation process until such time that the Secretary of the Interior and the Relocation Commission comply with the requirements of the Settlement Act. The district court ruled that only the tribal chairmen may maintain an action such as this one. We review the district court's ruling on standing de novo, e.g., Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985), accepting as true the allegations of the complaint and construing the complaint in favor of plaintiffs-appellants. See Gladstone, Realtors, v. Village of Bellwood, 441 U.S. 91, 109, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979).
 
 
 11
 Since Benally's complaint in substance challenges agency action and inaction under the Administrative Procedure Act ("the APA"), 5 U.S.C. Sec. 702, we will not penalize Benally for failing to explicitly ground her complaint on the APA. See Haddock v. Board of Dental Examiners, 777 F.2d 462, 464-65 (9th Cir.1985) (remanding case so that appellant could pursue claims under Sec. 1983 and the Fourteenth Amendment despite facts that complaint did not refer to Sec. 1983 and appellant relied exclusively on Title VII on appeal).
 
 
 12
 We start with the general presumption that substantive statutes allow for review of agency action and inaction pursuant to the APA. See Inter-Tribal Council of Nevada, Inc. v. Hodel, 856 F.2d 1344, 1351 (9th Cir.1988), cert. denied, --- U.S. ----, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989). Nonetheless, the APA has specific standing requirements which must be satisfied. "[I]n order to meet the standing requirement of section 702, 'the interest sought to be protected by the complainant [must] arguably [be] within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' " Id. (quoting Association of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 152-53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)). The plaintiff must have been injured in fact by the action he seeks to have reviewed. Id. Moreover, the plaintiff's injury must be " 'redressable by the court.' " Preston v. Heckler, 734 F.2d 1359, 1364 (9th Cir.1984) (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)). This test also satisfies the minimum standing requirements of article III of the Constitution. Id. at 1365.
 
 
 13
 Although Benally has not clearly identified the injury which she has suffered, we perceive two possibilities, which we discuss in turn.
 
 
 14
 * The first injury implicitly claimed by Benally is the loss of relocation benefits themselves. Although the complaint does not specify whether Benally has applied for such benefits, it does state that she has been certified by the Relocation Commission as eligible to receive these benefits. Moreover, the complaint posits a direct relation between the procedures listed in the Settlement Act and the ultimate award of benefits. In short, Benally appears to allege that unless the Secretary of the Interior and the Relocation Commission follow the procedures enumerated in the Settlement Act at 25 U.S.C. Sec. 640d-11 to 640d-14 and the URA, 42 U.S.C. Sec. 4601 et seq.[3] , she will be unable to receive a fair amount of relocation benefits. In particular, she alleges that the report and plan submitted to Congress by the Relocation Commission did not comply with the dictates of 25 U.S.C. Sec. 640d-12.
 
 
 15
 We conclude that Benally cannot litigate this claim because her injury is not yet ripe. We have already rejected the notion that failure on the part of the Relocation Commission to submit a complete or even wholly accurate relocation report to Congress inexorably leads to a reduction in the benefits for which a relocatee might qualify. In Walker, we stated that "[i]t would be contrary to congressional intent to deny benefits to those otherwise eligible but not appearing on the list [enumerating individuals subject to relocation mandated by 25 U.S.C. Sec. 640d-12(b)(1) ] on the grounds the list is conclusive." Walker, 728 F.2d at 1280. Similarly, the possibility that the relocation report fails to assure that relocated households are provided with adequate sewers, roads, schools, and health facilities, see 25 U.S.C. Sec. 640d-12(c)(4), does not necessarily mean that such services will not in fact be provided. Unless and until Benally becomes dissatisfied with the ultimate bundle of benefits which the Relocation Commission provides her, she will not suffer any palpable injury.[4]
 
 
 16
 At this time, Benally can only guess whether a judicial ruling in her favor will increase the likelihood that she receives a favorable amount of relocation benefits. Indeed, at present she cannot be certain that she will even receive benefits.
 
 B
 
 17
 The second injury implicit in Benally's complaint is the violation of her statutory rights under the Settlement Act. Under this theory, the Settlement Act vests certain "procedural rights" in Benally, the violation of which is itself a sufficient injury in fact to support standing in an action alleging the defendant's violation of a statutory duty. See generally City of Davis v. Coleman, 521 F.2d 661, 671 (9th Cir.1975). We recently stressed, however, that the mere fact that a defendant has a duty does not necessarily mean that any given plaintiff may sue to enforce compliance with that duty:
 
 
 18
 [A] plaintiff who merely claims that a defendant violated a statutory duty does not necessarily satisfy the requirement of injury in fact in article III. Instead, we hold that the crucial inquiry in such a situation is whether a statute that imposes statutory duties creates correlative procedural rights in a given plaintiff, the invasion of which is sufficient to satisfy the requirement of injury in fact in article III. In determining whether a given statutory duty creates a correlative procedural right, we look to the statutory language, the statutory purpose, and the legislative history.
 
 
 19
 Fernandez v. Brock, 840 F.2d 622, 630 (9th Cir.1988). In short, the fact that the Relocation Commission must perform certain procedural duties under the Settlement Act does not by itself establish Benally's right to seek compliance with these duties.
 
 
 20
 We conclude that the Settlement Act does not create a procedural right in individual Hopi and Navajo Indians. Nothing in either the language of the Settlement Act or its legislative history suggests that individuals can make the sort of broad challenges that Benally asserts in this action. Although we are mindful that 25 U.S.C. Sec. 640d-14(g) allows individuals to appeal benefits eligibility determinations in court, we do not agree that this provision establishes the right of individuals to challenge the broad procedural framework of the Settlement Act, especially where, as here, the complaint alleges violations that affect all relocatees generally.
 
 
 21
 Instead, we agree with the district court that the Settlement Act vests an implicit procedural right in the chairmen of the Navajo and Hopi tribes to bring the type of claims at issue here. The Settlement Act establishes that it is the tribal chairmen who can vindicate individual rights in an intertribal dispute "to fully accomplish all objects and purposes of" the Settlement Act, 25 U.S.C. Sec. 640d-17(c); see also Zah, 718 F.2d at 1457 (tribal chairmen, not individuals, have standing in "a supplemental proceeding to effectuate a judicial land settlement"). It is this broad right of action which we read as implying a procedural right in tribal chairmen to challenge government compliance with the dictates of the Settlement Act. For it cannot seriously be disputed that resolution of the intertribal dispute necessarily entails the relocation of certain individuals and the payment of compensatory benefits to them. As such, the challenges in this case are on the order of a supplemental proceeding to effectuate the land settlements between the tribes. Moreover, in passing the Settlement Act, "Congress was concerned with a speedy and fair resolution of the dispute between the tribes." Sekaquaptewa, 591 F.2d at 1293 n. 9; see also H.R.Conf.Rep. No. 1094, 96th Cong., 2d Sess. 11 (1980) (discussing 1980 amendments to Settlement Act: "Where there may be ambiguities in the terms of the Act, it is the intent of the committee that those ambiguities be construed in a manner that will achieve litigation-free, expeditious implementation of the Act and relocation of families."). Surely the dispute between the Navajos and Hopis would linger even longer if every individual affected by the relocation process could challenge the methods by which relocation is achieved.
 
 
 22
 We recognize that the judicial resolution of relocation benefits is itself a supplemental proceeding to effectuate the settlement between the tribes. But it made sense for Congress to single out this type of action for individual standing: each household might have a discrete, singular quarrel with the Relocation Commission over the fair market valuation of its home as well as over the costs of relocation. The allegations in Benally's complaint, however, are general and appear to be of equal concern to all relocatees. Congress decided that individual rights would be vindicated by the tribal chairmen in the context of intertribal disputes. We conclude that Congress meant for tribal chairmen also to challenge the government's application of the Settlement Act on behalf of the generalized rights of relocatees. Indeed, the Navajo chairman already has brought a parallel lawsuit containing many of the allegations at stake in the instant case.
 
 IV
 
 23
 For the reasons discussed above, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Relocation Commission is an independent federal agency created by Congress pursuant to 25 U.S.C. Sec. 640d-11 for the purpose of carrying out the relocation of Navajo and Hopi tribal members
 
 
 [2]
 Specifically, they claim that appellees 1) failed to submit to Congress the type of detailed plan and report required by 25 U.S.C. Sec. 640d-12; 2) failed to establish a uniform policy for the fair and equitable treatment of Navajos displaced as a result of 25 U.S.C. Sec. 640d et seq.; and 3) are purporting to carry out the relocation of Navajos currently residing on Hopi land in the absence of statutory authorization or in a way not in compliance with the dictates of 25 U.S.C. Sec. 640d et seq. They also claim that the United States 4) violated the due process clause by including a change in the method by which relocation benefits are determined in an appropriations measure, or, alternatively, effected a taking without just compensation by failing to compensate them separately for their habitation and improvements when determining benefit levels; 5) violated the equal protection clause by passing 25 U.S.C. Sec. 640d-10(h), which creates "a sub-class of relocatees who are the only Navajos eligible to move to the 'New Lands.' " Finally, they claim that 6) the Relocation Commission has failed to provide the preferential relocation assistance mandated by 25 U.S.C. Sec. 640d-14(f); and 7) appellees' fifth amendment violations constitute a breach of the government's trust and fiduciary responsibilities towards native American Indians
 
 
 [3]
 The Settlement Act requires the Relocation Commission to reimburse heads of households required to relocate as if they were displaced persons under the URA, 25 U.S.C. Sec. 640d-14(b)(1), and to "establish standards consistent with those established by the implementation of" the URA, id. Sec. 640d-14(c)
 
 
 [4]
 Of course, Benally can appeal a benefits determination pursuant to 25 U.S.C. Sec. 640d-14(g). See Bedoni, 878 F.2d 1119; cf. Begay v. United States, 16 Cl.Ct. 107 (1987) (broad challenges to Settlement Act procedures made in context of claim for money damages in light of benefits received pursuant to relocation), aff'd, 865 F.2d 230 (Fed.Cir.1988). But were the broad challenges asserted in this case the only ones made in such an appeal, we would again lack standing because it would be wholly speculative whether we could redress Benally's injuries. As Walker illustrates, submission of an accurate report and relocation plan to Congress is not a necessary prerequisite to the ultimate award of relocation benefits. Thus, even were we to conclude that the Relocation Commission violated its statutory duty, we could not be confident that the Relocation Commission would alter its award in a subsequent benefits determination
 The situation thus would be distinguishable from those in which we have held that parties may challenge agency action on the ground that judicial relief would make them eligible for benefits they otherwise would have no chance of being awarded. See, e.g., Bullfrog Films, Inc. v. Wick, 847 F.2d 502, 506-08 (9th Cir.1988) (film makers and companies may challenge United States Information Agency's regulations governing certification of films since such certification is an essential prerequisite to obtaining benefits under the Beirut Agreement governing educational audio-visual materials). It would also be distinguishable from the situation presented in Preston v. Heckler, 734 F.2d 1359 (9th Cir.1984). In Preston, we approved standing where an agency's failure to promulgate statutorily required separate and independent standards for evaluating the employment qualifications of Indians made it impossible to say whether, had the standards been established, the plaintiff would have been eligible to compete for a job as a social worker. See id. at 1365-66. Nonetheless, it was clear in Preston that the plaintiff had no chance of being considered for the position of social worker without adoption of separate standards. Here, by contrast, Benally would be eligible for adequate relocation compensation even if the Relocation Commission had failed to submit to Congress the report and plan required by 25 U.S.C. Sec. 640d-12.